IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH L. DOBRUSIN,<br><br>      Plaintiff,<br><br>v.<br><br>COMPASS LEXECON, LLC,<br><br>      Defendant. | Case No.<br><br>**Trial by jury demanded.** |

## COMPLAINT

COMES NOW the Plaintiff, by and through her attorneys, The Case Law Firm, LLC, and for complaint against the Defendant states as follows:

### Introduction

1. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereinafter "ADEA"); and the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et. seq., as amended (hereinafter "ADA"); and the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 et seq., as amended (hereinafter "FMLA").

### Jurisdiction & Venue

2. Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331 and § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c).

### Factual Allegations

3. Plaintiff Deborah L. Dobrusin is a citizen of the United States and a resident of Highland Park, Lake County, Illinois.

4.	Defendant Compass Lexecon, LLC ("Defendant") is a Maryland registered limited liability company ("LLC") qualified and doing business in Chicago, Cook County, Illinois. At all relevant times, Defendant constituted an "employer" as defined by the aforementioned statutes.

5.	Plaintiff began working for Defendant as a research analyst on or around October 1995. On or around June 1996, Defendant promoted Plaintiff to the position of Economist as part of the professional staff, and on or around December 2004, Defendant promoted Plaintiff to the position of Vice President. Plaintiff held the position of Vice President for six (6) years.

6.	Throughout Plaintiff's fifteen (15) year tenure with Defendant, she at all times met and/or exceeded Defendant's legitimate performance expectations. Indeed, while working for Defendant, Plaintiff received consistent positive evaluations, pay increases, and bonuses as a reflection of her solid work performance.

## Plaintiff's Need to Care for Her Sick Daughter and Husband

7.	On or around November 2009, Plaintiff's daughter was diagnosed with a type of liver tumor that required extensive medical treatment. This condition rendered her daughter periodically substantially limited in her activities of daily living and also substantially limited her in a number of major life activities.

8.	On or around September 2009, Plaintiff's husband was hospitalized for an enlarged prostate and kidney issues and underwent surgery in October for the condition.

9.	As a result of Plaintiff's daughter's and husband's medical conditions, Plaintiff took limited time off of work to care for them in the years 2009 and 2010.

10.	Both Hal Sider, a Senior Vice President and Head of Defendant's Management Committee, and Liz Sodaro, Compass Lexecon Human Resources Director, knew of Plaintiff's

daughter's and husband's medical conditions and her accompanying need for limited time off to care for each of them during that time.

11. Neither Mr. Sider nor Human Resources ever told Plaintiff that she could or should designate this time off as FMLA leave.

12. Instead, on March 1, 2010, during a meeting to discuss Plaintiff's 2009 annual performance review, Mr. Sider referenced her husband's and daughter's medical conditions, told her that he knew "2009 was a hard year for [her]," and then immediately thereafter, accused Plaintiff of "lacking dedication" in terms of her work performance because of these family medical obligations.

13. Despite this criticism regarding Plaintiff's supposed "lack of dedication," Plaintiff still received a positive review and was still awarded a sizable performance bonus.

### Defendant's Decision to Terminate Plaintiff

14. On or around March 3, 2011, Defendant decided to terminate Plaintiff.

15. At the time of Plaintiff's termination, Plaintiff was 58 years old.

### Defendant's Shifting Justifications for Plaintiff's Termination

16. Mr. Sider and Mark Zumbach, Defendant's Chief Operating Officer, informed Plaintiff of her termination on March 3, 2011. Mr. Sider and Mr. Zumbach told Plaintiff that they had decided to terminate her because the company did not need her "coordinator" and "intermediary" skills any longer. However, the majority of Plaintiff's job responsibilities did not include coordinating or acting as an intermediary. As a Vice President, Plaintiff's main responsibilities focused on project management, programming and analyzing data, client contact, and reviewing and abstracting documents and academic literature.

17. During this same meeting, Mr. Zumbach and Mr. Sider gave Plaintiff documents which showed that her separation was part of a "reduction in force" ("RIF"). However, Plaintiff was one of only two individuals terminated from Defendant's entire Chicago office as part of this supposed "RIF." Plaintiff and the other individual who were terminated were the oldest Vice Presidents in the Chicago office. At the time of Plaintiff's termination, Defendant's Chicago office consisted of approximately 140 employees and 19 Vice Presidents.

18. Several days after Mr. Sider and Mr. Zumbach informed Plaintiff of her termination, Plaintiff met with Mr. Zumbach to clarify the reason for her termination. This time, Mr. Zumbach said that he would have to double check with Mr. Sider about the reasons for the termination and the appropriate "wording."

19. On March 10, 2011, Plaintiff met with Mr. Sider and Mr. Zumbach once again to discuss her termination. At this meeting, Mr. Sider exhibited extreme hostility toward Plaintiff. Mr. Sider and Mr. Zumbach informed Plaintiff that the company had decided to terminate her because, in addition to no longer needing her "coordinating" and "intermediary" skills, her performance had "waned" and her "billable hours were low." Plaintiff then asked why, as a long-term employee and in light of company past practices, she had not received any warning regarding performance issues or low billable hours. Mr. Sider responded by claiming that he had warned Plaintiff in her 2009 annual performance review.

20. Despite Mr. Sider's claims, Defendant never warned Plaintiff of any performance problems, aside from Mr. Sider accusing Plaintiff of "lacking dedication" in connection with Plaintiff's need to take limited time off of work to care for her sick daughter and husband. Plaintiff's 2009 annual performance review did not reference any problems with Plaintiff's performance or with Plaintiff's billable hours. Instead, Plaintiff received a sizeable bonus

4

indicative of her solid performance in the year 2009. A number of Plaintiff's substantially younger counterparts had received a series of negative performance reviews and/or had low billable hours; yet, those employees were not similarly selected for termination as part of Defendant's supposed "RIF." Furthermore, employees who did have low billable hours received warnings and were given opportunities to correct any deficiencies prior to becoming subject to disciplinary action.

### Plaintiff's Exhaustion of Administrative Prerequisites

21. Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on April 19, 2011, alleging associational disability discrimination and age discrimination. Attached as Exhibit 1 is a copy of that Charge.

22. Plaintiff received her Notice of Right to Sue from the EEOC on August 26, 2011. Attached as Exhibit 2 is a copy of that Notice.

### COUNT I
### AGE DISCRIMINATION IN VIOLATION OF ADEA

23. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count I.

24. Defendant intentionally discriminated against Plaintiff on the basis of her age in violation of the ADEA by terminating her employment as part of a supposed "RIF" on March 3, 2011.

25. Defendant committed the aforesaid discriminatory act with malice or with reckless indifference to Plaintiff's federally protected rights under the ADEA.

26. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits.

5

**WHEREFORE,** Plaintiff requests that this Court:

A. Enter a finding that she was subjected to age discrimination in violation of the ADEA;

B. Enter a finding that Defendant engaged in the age discrimination with malice and reckless indifference for Plaintiff's rights under the ADEA;

C. Order Defendant to reinstate Plaintiff to her former position earning her former salary;

D. Award Plaintiff lost wages and lost benefits;

E. Award Plaintiff front pay as appropriate;

F. Award Plaintiff liquidated damages in an amount to be proven at trial;

G. Award Plaintiff her reasonable attorneys' fees and costs incurred in bringing this action;

H. Award Plaintiff prejudgment interest; and

I. Award Plaintiff any further relief this Court deems to be just and appropriate.

## COUNT II
## ASSOCIATIONAL DISCRIMINATION IN VIOLATION OF THE ADA

27. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count II.

28. At all relevant times, Plaintiff was a qualified employee entitled to the protections of the ADA.

29. Defendant subjected Plaintiff to an adverse employment action when it terminated her as a result of her relation to and association with her daughter and husband, both of whom suffered from disabilities.

30. Defendant intentionally discriminated against Plaintiff on the basis of her known association with her disabled daughter and disabled husband when Defendant engaged in the aforesaid discriminatory acts with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA.

31. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a finding that Defendant discriminated against Plaintiff in violation of the ADA;

B. Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;

C. Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

D. Award Plaintiff compensatory and punitive damages;

E. Award Plaintiff attorneys' fees; and

F. Award Plaintiff any such further relief that the Court may deem just and equitable.

## COUNT III
## INTERFERENCE IN VIOLATION OF THE FMLA

32. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count III.

33. Plaintiff was an eligible employee as defined by the FMLA.

7

34. Upon receiving reasonable notice from Plaintiff of her need for family medical leave in order to take care of her sick daughter and husband, Defendant had a duty to provide Plaintiff with the appropriate medical leave pursuant to the FMLA.

35. Defendant knowingly, intentionally, and willfully failed to provide Plaintiff with the leave to which she was entitled.

36. As a direct and proximate result, Plaintiff has suffered loss of employment and great expense, including but not limited to lost wages and lost benefits.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter a finding that Defendant interfered with Plaintiff's FMLA rights;

B. Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;

C. Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

D. Award Plaintiff liquidated damages;

E. Award Plaintiff attorneys' fees; and

F. Award Plaintiff any such further relief that the Court may deem just and equitable.

## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE FMLA

37. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count IV.

38. Plaintiff was an eligible employee as defined by the FMLA.

39. Defendant knowingly, intentionally and willfully discriminated against Plaintiff in considering Plaintiff's taking of limited FMLA leave during 2009 and 2010 when it decided to terminate her as part of a supposed "RIF" on March 3, 2011 and in treating her differently than her counterparts who had not needed leave.

40. As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter a finding that Defendant discriminated against her in violation of the FMLA;

B. Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;

C. Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

D. Award Plaintiff liquidated damages;

E. Award Plaintiff attorneys' fees; and

F. Award Plaintiff any such further relief that the Court may deem just and equitable.

## COUNT V
## RETALIATION IN VIOLATION OF THE FMLA

41. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count V.

42. Plaintiff was an eligible employee as defined by the FMLA.

43. Defendant knowingly, intentionally, and willfully retaliated against Plaintiff as a result of Plaintiff exercising her rights under the FMLA by terminating Plaintiff after Plaintiff took limited FMLA time off of work in 2009 and 2010 to care for her sick daughter and husband.

9

44. As a direct and proximate result, Plaintiff suffered loss of employment and other great expense, including but not limited to lost wages and lost benefits.

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter a finding that Defendant retaliated against Plaintiff in violation of the FMLA;

B. Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;

C. Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

D. Award Plaintiff liquidated damages;

E. Award Plaintiff attorneys' fees; and

F. Award Plaintiff any such further relief that the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted,

DEBORAH L. DOBRUSIN

By: /s/ Kristin M. Case
One of Her Attorneys

Kristin M. Case
Kate Sedey
The Case Law Firm, LLC
250 S. Wacker Drive, Suite 230
Chicago, Illinois 60606
Tel. (312) 920-0400
Facsimile (312) 920-0800