**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH L. DOBRUSIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 07370 |
| | ) | |
| COMPASS LEXECON, LLC, | ) | Hon. George W. Lindberg |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) | |
| | ) | |

## AMENDED ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Compass Lexecon, LLC, ("Defendant") answers the Complaint of Deborah L. Dobrusin, ("Plaintiff") as follows:

### Introduction

"1.     This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereinafter "ADEA"); and the Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et. seq., as amended (hereinafter "ADA"); and the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 et seq., as amended (hereinafter "FMLA")."

**ANSWER**:  Defendant admits that Plaintiff is seeking to pursue claims against

Defendant under the ADEA, the ADA, and the FMLA.  Defendant denies that Plaintiff's claims

have merit, and that Plaintiff is entitled to any relief.  Defendant denies any remaining allegations

of Paragraph 1 of the Complaint.

### Jurisdiction & Venue

"2.     Jurisdiction is conferred on this Court by the above-named statutes, as well as by 28 U.S.C. § 1331 and § 1367. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and (c)."

**ANSWER**:   Paragraph 2 contains legal conclusions to which no response is

required.  To the extent these legal conclusions can be construed as allegations of fact, Defendant

1

admits that the Court has subject matter jurisdiction over this action and that venue is proper in the Northern District of Illinois, Eastern Division. Defendant denies any remaining allegations of Paragraph 2 of the Complaint.

## Factual Allegations

"3.  Plaintiff Deborah L. Dobrusin is a citizen of the United States and a resident of Highland Park, Lake County, Illinois."

**ANSWER**: On information and belief, Defendant admits the allegations of Paragraph 3 of the Complaint.

"4.  Defendant Compass Lexecon, LLC ("Defendant") is a Maryland registered limited liability company ("LLC") qualified and doing business in Chicago, Cook County, Illinois. At all relevant times, Defendant constituted an 'employer' as defined by the aforementioned statutes."

**ANSWER**: Defendant admits that it is registered in Maryland as a limited liability company and in Illinois as a foreign limited liability company. Paragraph 4 contains legal conclusions to which no response is required. To the extent these legal conclusions can be construed as allegations of fact, Defendant admits that it is an "employer" under the ADA, the ADEA, and the FMLA. Defendant denies any remaining allegations of Paragraph 4 of the Complaint.

"5.  Plaintiff began working for Defendant as a research analyst on or around October 1995. On or around June 1996, Defendant promoted Plaintiff to the position of Economist as part of the professional staff, and on or around December 2004, Defendant promoted Plaintiff to the position of Vice President. Plaintiff held the position of Vice President for six (6) years."

**ANSWER**: Defendant admits that Plaintiff began employment by Defendant as an Analyst on October 23, 1995, that Plaintiff was promoted to Economist on June 1, 1996, that Plaintiff was promoted to Vice President on January 1, 2005, and that Plaintiff's employment as a

Vice President was terminated effective April 1, 2011. Defendant denies any remaining allegations of Paragraph 5 of the Complaint.

"6.    Throughout Plaintiff's fifteen (15) year tenure with Defendant, she at all times met and/or exceeded Defendant's legitimate performance expectations. Indeed, while working for Defendant, Plaintiff received consistent positive evaluations, pay increases, and bonuses as a reflection of her solid work performance."

ANSWER: Defendant admits that Plaintiff was employed by Defendant from October 23, 1995 to April 1, 2011. Defendant denies the remaining allegations of Paragraph 6 of the Complaint.

## Plaintiff's Need to Care for Her Sick Daughter and Husband

"7.    On or around November 2009, Plaintiff's daughter was diagnosed with a type of liver tumor that required extensive medical treatment. This condition rendered her daughter periodically substantially limited in her activities of daily living and also substantially limited her in a number of major life activities."

ANSWER: Defendant lacks sufficient information and knowledge to admit or deny, and accordingly denies the allegations of Paragraph 7 of the Complaint. Paragraph 7 contains legal conclusions to which no response is required. To the extent these legal conclusions can be construed as allegations of fact, Defendant denies them.

"8.    On or around September 2009, Plaintiff's husband was hospitalized for an enlarged prostate and kidney issues and underwent surgery in October for the condition."

ANSWER: Defendant lacks sufficient information and knowledge to admit or deny, and accordingly denies the allegations set forth in Paragraph 8 of the Complaint.

"9.    As a result of Plaintiff's daughter's and husband's medical conditions, Plaintiff took limited time off of work to care for them in the years 2009 and 2010."

ANSWER: Defendant admits that Plaintiff took approximately 200.5 hours of paid time off in 2009, and approximately 128.75 hours of paid time off in 2010. Defendant denies the remaining allegations of Paragraph 9 of the Complaint.

"10.    Both Hal Sider, a Senior Vice President and Head of Defendant's Management Committee, and Liz Sodaro, Compass Lexecon Human Resources Director, knew of Plaintiff's daughter's and husband's medical conditions and her accompanying need for limited time off to care for each of them during that time."

**ANSWER**: Defendant admits that Hal Sider was a Senior Vice President and Head of Defendant's Management Committee in 2009 and 2010, that Liz Sodaro was Defendant's Human Resources Manager/Director of Administration and Human Resources in 2009 and 2010, that Hal Sider learned that Plaintiff's husband had surgery in 2009 and that Plaintiff's adult daughter had some medical issues in 2009, and that Liz Sodaro learned that Plaintiff's daughter had some medical issues in 2009 and early 2010. Defendant denies the remaining allegations of Paragraph 10 of the Complaint.

"11.    Neither Mr. Sider nor Human Resources ever told Plaintiff that she could or should designate this time off as FMLA leave."

**ANSWER**:  Defendant admits that neither Hal Sider nor Liz Sodaro ever told Plaintiff that she could or should designate her alleged need for limited time off as FMLA leave. Defendant states affirmatively that Plaintiff had been provided Defendant's FMLA policy, that Plaintiff never requested FMLA leave to care for her husband or daughter due to serious medical conditions, and that Plaintiff took whatever limited paid time off she allegedly needed. Defendant denies any remaining allegations of Paragraph 11 of the Complaint.

"12.    Instead, on March 1, 2010, during a meeting to discuss Plaintiff's 2009 annual performance review, Mr. Sider referenced her husband's and daughter's medical conditions, told her that he knew '2009 was a hard year for [her],' and then immediately thereafter, accused Plaintiff of 'lacking dedication' in terms of her work performance because of these family medical obligations."

**ANSWER**:  Defendant admits that Hal Sider participated in a meeting with Plaintiff on March 1, 2010, to discuss Plaintiff's 2009 performance. Defendant denies the remaining allegations of Paragraph 12 of the Complaint.

4

"13.    Despite this criticism regarding Plaintiff's supposed 'lack of dedication,' Plaintiff still received a positive review and was still awarded a sizable performance bonus."

**ANSWER**:  Defendant admits that Plaintiff received a bonus for 2009.  Defendant denies the remaining allegations of Paragraph 13 of the Complaint.

## Defendant's Decision to Terminate Plaintiff

"14.    On or around March 3, 2011, Defendant decided to terminate Plaintiff."

**ANSWER**:  Defendant admits that on March 3, 2011, Defendant informed Plaintiff of the decision to terminate her employment effective April 1, 2011.  Defendant denies the remaining allegations of Paragraph 14 of the Complaint.

"15.    At the time of Plaintiff's termination, Plaintiff was 58 years old."

**ANSWER**:  Defendant admits the allegations of Paragraph 15 of the Complaint.

## Defendant's Shifting Justifications for Plaintiff's Termination

"16.    Mr. Sider and Mark Zumbach, Defendant's Chief Operating Officer, informed Plaintiff of her termination on March 3, 2011.  Mr. Sider and Mr. Zumbach told Plaintiff that they had decided to terminate her because the company did not need her 'coordinator' and 'intermediary' skills any longer.  However, the majority of Plaintiff's job responsibilities did not include coordinating or acting as an intermediary.  As a Vice President, Plaintiff's main responsibilities focused on project management, programming and analyzing data, client contact, and reviewing and abstracting documents and academic literature."

**ANSWER**: Defendant admits that Mr. Sider and Mark Zumbach, Defendant's Vice President Administration and Finance/Chief Operating Officer, informed Plaintiff of her termination on March 3, 2011.  Defendant denies the remaining allegations of Paragraph 16 of the Complaint.

"17.    During this same meeting, Mr. Zumbach and Mr. Sider gave Plaintiff documents which showed that her separation was part of a 'reduction in force' ("RIF").  However, Plaintiff was one of only two individuals terminated from Defendant's entire Chicago office as part of this supposed 'RIF.'  Plaintiff and the other individual who were terminated were the oldest Vice Presidents in the Chicago office. At the time of Plaintiff's termination, Defendant's Chicago office consisted of approximately 140 employees and 19 Vice Presidents."

5

ANSWER:  Defendant admits that during the March 3, 2011 meeting, Mr. Zumbach and Mr. Sider gave Plaintiff an Older Workers Benefit Protection Act disclosure document attached to a separation agreement which indicated that one other Vice President was being terminated.  Defendant denies that there was any discussion of a "reduction of force." Defendant admits that Plaintiff was one of two Vice Presidents terminated from Defendant's Chicago office in March 2011, that the other terminated Vice President was 58 years old in March of 2011, and that Defendant's Chicago office consisted of approximately 140 employees and 23 Vice Presidents, excluding Plaintiff, at the time of Plaintiff's termination.  Defendant denies the remaining allegations of Paragraph 17 of the Complaint.

"18.    Several days after Mr. Sider and Mr. Zumbach informed Plaintiff of her termination, Plaintiff met with Mr. Zumbach to clarify the reason for her termination.  This time, Mr. Zumbach said that he would have to double check with Mr. Sider about the reasons for the termination and the appropriate 'wording.'"

ANSWER:  Defendant admits that Plaintiff approached Mr. Zumbach on March 7, 2011, and indicated that she wanted to understand the reason(s) for her termination.  Defendant denies the remaining allegations of Paragraph 18 of the Complaint.

"19.    On March 10, 2011, Plaintiff met with Mr. Sider and Mr. Zumbach once again to discuss her termination. At this meeting, Mr. Sider exhibited extreme hostility toward Plaintiff. Mr. Sider and Mr. Zumbach informed Plaintiff that the company had decided to terminate her because, in addition to no longer needing her 'coordinating' and 'intermediary' skills, her performance had 'waned' and her 'billable hours were low.'  Plaintiff then asked why, as a long-term employee and in light of company past practices, she had not received any warning regarding performance issues or low billable hours. Mr. Sider responded by claiming that he had warned Plaintiff in her 2009 annual performance review."

ANSWER:  Defendant admits that Plaintiff met with Mr. Sider and Mr. Zumbach on March 10, 2011, regarding the reasons for Plaintiff's termination.  Defendant denies the remaining allegations of Paragraph 19 of the Complaint.

"20.    Despite Mr. Sider's claims, Defendant never warned Plaintiff of any performance problems, aside from Mr. Sider accusing Plaintiff of 'lacking dedication' in

connection with Plaintiff's need to take limited time off of work to care for her sick daughter and husband. Plaintiff's 2009 annual performance review did not reference any problems with Plaintiff's performance or with Plaintiff's billable hours.  Instead, Plaintiff received a sizeable bonus indicative of her solid performance in the year 2009.  A number of Plaintiff's substantially younger counterparts had received a series of negative performance reviews and/or had low billable hours; yet, those employees were not similarly selected for termination as part of Defendant's supposed 'RIF.'  Furthermore, employees who did have low billable hours received warnings and were given opportunities to correct any deficiencies prior to becoming subject to disciplinary action."

   **ANSWER**:  Defendant admits that Plaintiff received a bonus for 2009.  Defendant

denies the remaining allegations of Paragraph 20 of the Complaint.

### Plaintiff's Exhaustion of Administrative Prerequisites

   "21. Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on April 19, 2011, alleging associational disability discrimination and age discrimination. Attached as Exhibit 1 is a copy of that Charge."

   **ANSWER**:  Defendant admits the allegations of Paragraph 21 of the Complaint.

   "22. Plaintiff received her Notice of Right to Sue from the EEOC on August 26, 2011. Attached as Exhibit 2 is a copy of that Notice."

   **ANSWER**:  Defendant admits the allegations of Paragraph 22 of the Complaint.

### COUNT I
### AGE DISCRIMINATION IN VIOLATION OF ADEA

   "23. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count I."

   **ANSWER**:  Defendant restates and realleges its answers to Paragraphs 1 through

22 of the Complaint as its answer to Paragraph 23 of the Complaint as if fully set forth herein.

   "24. Defendant intentionally discriminated against Plaintiff on the basis of her age in violation of the ADEA by terminating her employment as part of a supposed 'RIF' on March 3, 2011."

   **ANSWER**:  Defendant denies the allegations of Paragraph 24 of the Complaint.

"25.    Defendant committed the aforesaid discriminatory act with malice or with reckless indifference to Plaintiff's federally protected rights under the ADEA."

**ANSWER**:  Defendant denies the allegations of Paragraph 25 of the Complaint.

"26.    As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits."

**ANSWER**:  Defendant denies the allegations of Paragraph 26 of the Complaint.

"WHEREFORE, Plaintiff requests that this Court:

A.  Enter a finding that she was subjected to age discrimination in violation of the ADEA;
B.  Enter a finding that Defendant engaged in the age discrimination with malice and reckless indifference for Plaintiff's rights under the ADEA;
C.  Order Defendant to reinstate Plaintiff to her former position earning her former salary;
D.  Award Plaintiff lost wages and lost benefits;
E.  Award Plaintiff front pay as appropriate;
F.  Award Plaintiff liquidated damages in an amount to be proven at trial;
G.  Award Plaintiff her reasonable attorneys' fees and costs incurred in bringing this action;
H.  Award Plaintiff prejudgment interest; and
I.  Award Plaintiff any further relief this Court deems to be just and appropriate."

**ANSWER:**    Defendant denies that Plaintiff is entitled to any relief.


## COUNT II
## ASSOCIATIONAL DISCRIMINATION IN VIOLATION OF THE ADA

"27.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count II."

**ANSWER**:  Defendant restates and realleges its answers to Paragraphs 1 through

26 of the Complaint as its answer to Paragraph 27 of the Complaint as if fully set forth herein.

"28.     At all relevant times, Plaintiff was a qualified employee entitled to the protections of the ADA."

ANSWER:  The allegations of Paragraph 28 contain legal conclusions to which no response is required.  To the extent these legal conclusions can be construed as allegations of fact, Defendant denies them.

"29.     Defendant subjected Plaintiff to an adverse employment action when it terminated her as a result of her relation to and association with her daughter and husband, both of whom suffered from disabilities."

ANSWER:  Defendant admits that Plaintiff's employment was terminated. Defendant denies the remaining allegations of Paragraph 29 of the Complaint.

"30.     Defendant intentionally discriminated against Plaintiff on the basis of her known association with her disabled daughter and disabled husband when Defendant engaged in the aforesaid discriminatory acts with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA."

ANSWER:   Defendant denies the allegations of Paragraph 30 of the Complaint.

"31.     As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income, loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment, and future lost income and benefits."

ANSWER:  Defendant denies the allegations of Paragraph 31 of the Complaint.

"WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Enter a finding that Defendant discriminated against Plaintiff in violation of the ADA;
B.  Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;
C.  Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;
D.  Award Plaintiff compensatory and punitive damages;
E.  Award Plaintiff attorneys' fees; and
F.  Award Plaintiff any such further relief that the Court may deem just and equitable."

ANSWER:     Defendant denies that Plaintiff is entitled to any relief.

9

## COUNT III
## INTERFERENCE IN VIOLATION OF THE FMLA

"32.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count III."

**ANSWER**:  Defendant restates and realleges its answers to Paragraphs 1 through 31 of the Complaint as its answer to Paragraph 32 of the Complaint as if fully set forth herein.

"33.    Plaintiff was an eligible employee as defined by the FMLA."

**ANSWER**:  The allegations of Paragraph 33 contain legal conclusions to which no response is required.  To the extent these legal conclusions can be construed as allegations of fact, Defendant denies them.

"34.    Upon receiving reasonable notice from Plaintiff of her need for family medical leave in order to take care of her sick daughter and husband, Defendant had a duty to provide Plaintiff with the appropriate medical leave pursuant to the FMLA."

**ANSWER**:  The allegations of Paragraph 34 contain legal conclusions to which no response is required.  To the extent these legal conclusions can be construed as allegations of fact, Defendant denies them.

"35.    Defendant knowingly, intentionally, and willfully failed to provide Plaintiff with the leave to which she was entitled."

**ANSWER**:  Defendant denies the allegations of Paragraph 35 of the Complaint.

"36.    As a direct and proximately result, Plaintiff has suffered loss of employment and great expense, including but not limited to lost wages and lost benefits."

**ANSWER**:  Defendant denies the allegations of Paragraph 36 of the Complaint.

"WHEREFORE, Plaintiff respectfully requests that the Court:

  A. Enter a finding that Defendant interfered with Plaintiff's FMLA rights;
  B. Order Defendant to reinstate Plaintiff to her former position at her former rate of pay and benefits;
  C. Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;

    D. Award Plaintiff liquidated damages;
    E. Award Plaintiff attorneys' fees; and
    F. Award Plaintiff any such further relief that the Court may deem just and
       equitable."

    **ANSWER:**   Defendant denies that Plaintiff is entitled to any relief.


## COUNT IV
## DISCRIMINATION IN VIOLATION OF THE FMLA


    "37.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth in this Count IV."

    **ANSWER**: Defendant restates and realleges its answers to Paragraphs 1 through 36 of the Complaint as its answer to Paragraph 37 of the Complaint as if fully set forth herein.

    "38.    Plaintiff was an eligible employee as defined by the FMLA."

    **ANSWER**: The allegations of Paragraph 38 contain legal conclusions to which no response is required. To the extent these legal conclusions can be construed as allegations of fact, Defendant denies them.

    "39.    Defendant knowingly, intentionally and willfully discriminated against Plaintiff in considering Plaintiff's taking of limited FMLA leave during 2009 and 2010 when it decided to terminate her as part of a supposed 'RIF' on March 3, 2011 and in treating her differently than her counterparts who had not needed leave."

    **ANSWER**: Defendant denies the allegations of Paragraph 39 of the Complaint.

    "40.    As a direct and proximate result of said acts, Plaintiff has suffered loss of employment, loss of income and loss of other employment benefits, great expense, emotional distress, humiliation, embarrassment and future lost income and benefits."

    **ANSWER**: Defendant denies the allegations of Paragraph 40 of the Complaint.

    "WHEREFORE, Plaintiff respectfully requests that the Court:

    A. Enter a finding that Defendant discriminated against her in violation of the
       FMLA;
    B. Order Defendant to reinstate Plaintiff to her former position at her former rate
       of pay and benefits;

    C.  Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;
    D.  Award Plaintiff liquidated damages;
    E.  Award Plaintiff attorneys' fees; and
    F.  Award Plaintiff any such further relief that the Court may deem just and
        equitable."

       **ANSWER:**   Defendant denies that Plaintiff is entitled to any relief.


## COUNT V
## RETALIATION IN VIOLATION OF THE FMLA


       "41.    Plaintiff  incorporates by reference the preceding paragraphs as though fully set forth in this Count V."

       **ANSWER**: Defendant restates and realleges its answers to Paragraphs 1 through

40 of the Complaint as its answer to Paragraph 41 of the Complaint as if fully set forth herein.

       "42.    Plaintiff was an eligible employee as defined by the FMLA."

       **ANSWER**:  The allegations of Paragraph 42 contain legal conclusions to which no

response is required.  To the extent these legal conclusions can be construed as allegations of fact,

Defendant denies them.

       "43.    Defendant knowingly, intentionally, and willfully retaliated against Plaintiff as a result of Plaintiff exercising her rights under the FMLA by terminating Plaintiff after Plaintiff took limited FMLA time off of work in 2009 and 2010 to care for her sick daughter and husband."

       **ANSWER**: Defendant denies the allegations of Paragraph 43 of the Complaint.

       "44.    As a direct and proximate result, Plaintiff suffered loss of employment and other great expense, including but not limited to lost wages and lost benefits."

       **ANSWER**: Defendant denies the allegations of Paragraph 44 of the Complaint.

       "WHEREFORE, Plaintiff respectfully requests that the Court:

    A.  Enter a finding that Defendant retaliated against Plaintiff in violation of the
        FMLA;
    B.  Order Defendant to reinstate Plaintiff to her former position at her former rate
        of pay and benefits;
    C.  Award Plaintiff lost wages in the form of back pay and, if applicable, front pay;
    D.  Award Plaintiff liquidated damages;
    E.  Award Plaintiff attorneys' fees; and

F.  Award Plaintiff any such further relief that the Court may deem just and equitable."

**ANSWER:**    Defendant denies that Plaintiff is entitled to any relief.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's claims for lost wages are barred to the extent that Plaintiff failed to exercise reasonable efforts to mitigate her damages.

2.      Any claim for liquidated or punitive damages is barred because Defendant engaged in good faith efforts to comply with the ADEA, FMLA and ADA, and Defendant had and continues to have reasonable grounds to believe that Defendant's actions did not violate the law.

3.      Plaintiff's ADEA, FMLA and ADA claims are barred to the extent that the applicable statutes of limitations have expired as to the events on which the claims are based.

4.      Plaintiff's ADEA and ADA claims are barred to the extent that the events on which the claims were based were not made the subject of a timely charge of discrimination filed with the EEOC or Illinois Department of Human Rights.

5.      Plaintiff's claims are barred to the extent that the doctrines of waiver, estoppel, and fraud apply in this matter.

6.      Plaintiff took confidential and proprietary documents and work product of Compass Lexecon, its clients, and their clients for her personal benefit and use contrary to her agreements with and representations to Compass Lexecon.  Such misconduct would have been cause for immediate termination of Plaintiff's employment.  Compass Lexecon discovered her misconduct during discovery when Plaintiff produced those documents on March 16, 2012.  Therefore, Plaintiff's claim to damages and relief is cut off as of March 16, 2012, pursuant to the after-acquired evidence doctrine.

13

## COUNTERCLAIM

### Introduction

1.      After being informed of her termination, and while still employed by Compass Lexecon, Plaintiff/Counterclaim Defendant Dobrusin, acting willfully and in bad faith, secretly printed and took highly confidential and sensitive information, contained in emails, that was the property of Compass Lexecon and its clients.  These actions breached express terms of Dobrusin's employment contract with Compass Lexecon and Dobrusin's fiduciary obligations to her employer Compass Lexecon.  Compass Lexecon learned of Dobrusin's actions during discovery in this litigation.  Accordingly, in its Counterclaim, Compass Lexecon seeks: (1) immediate return or destruction of all copies of such information in the possession of Dobrusin, her counsel, and any other party to whom she may have disseminated such information; (2) damages, including punitive damages, for Dobrusin's breaches; (3) its costs and attorney fees; and (4) such other equitable relief as the Court may deem appropriate.

### Jurisdiction & Venue

2.      This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

### Factual Allegations

### The Parties

3.      Compass Lexecon is one of the world's leading economic consulting firms. Compass Lexecon is hired by law firms, corporations and government entities to serve as testifying experts in litigation, to serve as non-testifying experts in anticipation of litigation, and to provide other economic analyses.

14

4.      Dobrusin was hired by Compass Lexecon's predecessor Lexecon on October 23, 1995. Dobrusin was employed by Compass Lexecon until April 1, 2011. In March 2011, Dobrusin was a Vice President in Compass Lexecon's Chicago office.

<u>Compass Lexecon's Access to and Protection of Confidential Information</u>

5.      Compass Lexecon's work for its clients and their clients is necessarily highly confidential, and in many instances, constitutes work product. Where a retention is not public, even the fact that Compass Lexecon has been retained by a client may be confidential. In many litigation matters, Compass Lexecon receives confidential information which is subject to a protective order in the underlying litigation.

6.      Compass Lexecon has adopted policies and practices to ensure that its work for clients and information related thereto remains confidential. Compass Lexecon has implemented strict confidentiality policies, required employees to sign confidentiality agreements, required terminated employees to sign forms acknowledging their confidentiality obligations and representing that they have returned all such confidential and proprietary information unless otherwise approved, and required employees with access to information covered by a protective order to acknowledge and agree in writing to comply with the protective order.

<u>Dobrusin's Contractual Obligations to Protect Confidential Information</u>

7.      On October 24, 1995, Dobrusin signed a "Confidentiality Agreement" (attached as Ex. 1), which provides in pertinent part as follows:

  a.  Dobrusin acknowledged that during her employment she would "receive, develop, or otherwise obtain access to various documents, materials and information that are not generally known to the public ('Lexecon Information')" (<u>id.</u> at p. 1);

  b.  Dobrusin acknowledged that "this information is the property of Lexecon and/or its clients and is highly confidential." (<u>id.</u> at p. 1);

  c.  Dobrusin agreed that, at any time either during or after her employment with Lexecon, she would not: "(a) sell, use, publish or disclose Lexecon Information to

15

any person, including a family member or other person not employed by Lexecon or not employed by a client of Lexecon to whom the Lexecon Information pertains, except to the extent required in the performance of [her] assigned duties on behalf of Lexecon; or (b) remove any documents or information from the premises of Lexecon, except as required in the performance of [her] assigned duties on behalf of Lexecon." (id. at pp. 1-2);

 d. Dobrusin was required to "deliver to Lexecon promptly upon request or on the date of cessation of [her] employment with Lexecon all documents, copies thereof, and other materials in [her] possession relating to any Lexecon Information." (id. at p. 2);

 e. Dobrusin acknowledged that the agreement would survive her employment with Lexecon and remain in full force and effect after the cessation of her employment. (id. at p. 2); and

 f. Dobrusin agreed that any breach of the restrictions in the Confidentiality Agreement would be likely to result in irreparable harm to Lexecon and/or its clients. (id. at p. 2).

 8. On December 16, 2003, shortly after Lexecon became a wholly owned subsidiary of FTI, Dobrusin signed a letter Confirmation of Employment with FTI in the Lexecon Chicago office, effective December 1, 2003 (attached as Ex. 2), and "Terms of Employment" (attached as Ex. 3). The terms and conditions of her continued employment, included in pertinent part as follows:

 a. "Confidential Information" was "[i]nformation and materials relating to FTI, its clients, licensors and suppliers that are not generally available to the public" (id. at p. 1), including without limitations "confidential, proprietary information and trade secrets that third parties entrusted to FTI and its employees in confidence" (id. at p. 2);

 b. Dobrusin agreed Confidential Information may only be used or disclosed for business purposes related to her employment. (id. at p. 1);

 c. Dobrusin agreed "that the rights and obligations set forth in this Section will continue indefinitely and will survive termination with FTI" (id. at p. 2);

 d. Dobrusin acknowledged that all Confidential Information was the "sole property of FTI." (id. at p. 2);

 e. Dobrusin agreed that "if [she] cease[d] to be employed by FTI for any reason, [she] shall return promptly any Confidential Information, all originals and all copies of

all documents or other documents or materials, tools, equipment, computers, cell phones, or other property belonging to FTI or its customers or suppliers." (id. at p. 2); and

    f.    Dobrusin agreed that the only exceptions to the foregoing requirement were: "Notwithstanding any other provision herein, employee may retain (i) a copy of any report authored by the employee that has been circulated publicly, and (ii) a copy of any filed affidavit or declaration signed by the employee, as well as a copy of the transcription of any testimony provided by the employee in any sworn proceeding." (id. at p. 2-3).

9.    FTI's "Confidentiality" Policy (attached as Ex. 4) provides in pertinent part that:

    a.    "[a]ny information concerning the business of FTI, its customers, suppliers, sub-contractors, dealers, employees or personnel associated with FTI is confidential and restricted." (id.); and

    b.    "[Employees] may not reveal any such information except under the direction of [their] Supervisor or with his approval." (id.).

10.    Further, FTI's "Personal Use And Security Of FTI Property" Policy (attached as Ex. 5) provides that:

    a.    "Employees are responsible for the safety, security, and confidentiality of FTI/Client equipment and materials in their possession." (id.);

    b.    [Employees] "may not remove FTI property from the premises for personal use without their supervisor's approval." (id.); and

    c.    "[A]ll client data and copies of client data shall be handled and treated confidentially during a project and must be returned to FTI at the close of a project. Any client data on laptops must be appropriately archived and removed from the laptop following the close of the project." (id.).

<u>Dobrusin Improperly Takes Compass Lexecon's Confidential Information</u>

11.    On March 3, 2011, Dobrusin was advised that her employment was to terminate effective April 1, 2011, due to, among other things, her poor performance.

12.    Soon after she was informed by Compass Lexecon of her impending termination, Dobrusin printed and took at least 852 pages of e-mails from her Compass Lexecon email account and 53 billable time records from Compass Lexecon's time-keeping system.

13.     The proprietary and confidential Compass Lexecon documents Dobrusin took consist of Compass Lexecon working file emails and billable time records which identify Compass Lexecon clients and their clients.  These documents are particularly sensitive because, among other things:

   a.  Many of the working file emails are on active litigation matters;

   b.  One of the active litigation matters is subject to a protective order with which Dobrusin agreed (in writing) to comply;

   c.  Other e-mails relate to retentions which are not public; and

   d.  Some of the billable time records also identify Compass Lexecon clients or their clients retentions which are not public.

14.     Dobrusin printed and took these documents not for any purpose related to her work for Compass Lexecon, but because she anticipated filing her claims in the instant action and believed that they support her contention that criticisms of her performance were unwarranted.

15.     Dobrusin was aware when she printed and took these documents that her actions were directly contrary to Compass Lexecon's interests, and were likely to cause Compass Lexecon irreparable harm.

16.     Dobrusin's last day in the office was March 10, 2011.

<u>Dobrusin Intentionally Misleads Compass Lexecon About Her Actions</u>

17.     On March 10, 2011, Dobrusin signed an "Equipment and Property Collection" Form (attached as Ex. 6), acknowledging:

   a.  "FTI Intellectual Property, Assets and Proprietary Information/Confidentiality. During the term of [her] employment, or at any time thereafter, the employee will not use for [her] own benefit or purpose, or disclose to or use for the benefit of any person, firm, corporation or other entity for any reason or purpose whatsoever, any trade secret or confidential information belonging to or in the possession of the corporation, unless authorized by the corporation in connection with the performance of the employee's duties and responsibilities hereunder."  (i<u>d</u>.); and

18

      b.   The "above equipment and property belonging to FTI has been returned to FTI on the above date."  (id.).

18.     Dobrusin also specifically noted on Ex. 6 that a phone was in her possession which she would return.  Also, noted on Ex. 6 were items she was approved to keep.  Several subsequent e-mails between Dobrusin and Compass Lexecon HR Director Liz Sodaro supplemented the form as to what Dobrusin would be permitted to keep and what needed to be returned.  (Exs. 7, 8 and 9).

19.     Dobrusin at no time noted that she had taken any e-mails on client matters or billable time records.

<u>Compass Lexecon Discovers Dobrusin's Misappropriation</u>

20.     On October 18, 2011, Dobrusin filed the instant lawsuit against Compass Lexecon, alleging violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA") and the Family and Medical Leave Act ("FMLA").  Compass Lexecon answered the complaint on January 6, 2012, and served discovery requests on Dobrusin on February 2, 2012.

21.     On March 16, 2012, Compass Lexecon received Dobrusin's production of documents, and discovered upon review that Dobrusin had taken proprietary and confidential documents and work product of Compass Lexecon, its clients and their clients, consisting of 852 pages of Compass Lexecon working file emails on client matters and 53 pages of billable time records which identified Compass Lexecon clients and their clients.

22.     Despite numerous requests from Compass Lexecon's counsel, Dobrusin refused to unconditionally return the confidential information and conditioned return on reaching an agreement with Compass Lexecon that would allow her to use the information in her lawsuit.

23.     Due to the nature of its business, Compass Lexecon must ensure that confidential information relating to its client retentions is kept confidential and used only for purposes related to the matters on which the client retained Compass Lexecon.

24.     Compass Lexecon has suffered and will continue to suffer harm as a result of Dobrusin's conduct.

**Count I: Breach of Contract in Bad Faith and
Violations of the Implied Covenants of Good Faith and Fair Dealing**

25.     Compass Lexecon incorporates and realleges the allegations of paragraphs 1-24 above.

26.     Dobrusin had a contractual obligation to protect confidential information she received as a part of her work for Compass Lexecon.

27.     Dobrusin knowingly, willingly, and in bad faith violated this obligation by:

    a.  Taking confidential and proprietary Compass Lexecon information from Compass Lexecon's offices for her personal use;

    b.  Disseminating that information to her counsel and perhaps others;

    c.  Refusing to return that information to Compass Lexecon on demand; and

    d.  Attempting to use that information to advance her own interests in this litigation.

28.     Dobrusin acted willfully and in bad faith and in violation of the implied covenants of good faith and fair dealing.

29.     Compass Lexecon has suffered, and continues to suffer harm as a result of Dobrusin's breaches.

**Count II: Breach of Fiduciary Duty**

30.     Compass Lexecon incorporates and realleges the allegations of paragraphs 1-29 above.

31.     As its employee, Dobrusin owed Compass Lexecon a duty of loyalty and fidelity.

32.     Dobrusin breached this duty when she acted in furtherance of her own interests and to the detriment of Compass Lexecon when, while still employed by Compass Lexecon, she took confidential information and misled Compass Lexecon about her conduct, and then sought to use the information for her personal benefit.

33.     Dobrusin acted willfully and in bad faith in violation of her fiduciary obligations.

34.     Compass Lexecon has suffered and continues to suffer harm as a result of Dobrusin's breaches.

<u>**Relief Requested**</u>

In light of the foregoing, and as relief, Compass Lexecon requests the following relief:

A.     An order requiring Dobrusin to immediately return all copies of Compass Lexecon's confidential information in her possession;

B.     An order awarding Compass Lexecon its fees and costs incurred in connection with its Counterclaim;

C.     An order awarding Compass Lexecon compensatory, exemplary and punitive damages in an amount to be proven at trial; and

D.     Such other legal or equitable relief as the Court deems appropriate.

<u>**Jury Demand**</u>

Compass Lexecon demands a jury trial.

Dated: May 3, 2012                                         Respectfully submitted,

                                                                         COMPASS LEXECON, LLC

                                                                         By: _____/s Carla J. Rozycki_____
                                                                                  One of Its Attorneys

Carla J. Rozycki
Amanda S. Amert
Colleen G. DeRosa
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
312 222-9350

<u>**CERTIFICATE OF SERVICE**</u>

I, Carla J. Rozycki, an attorney, hereby certify that on May 3, 2012, I caused a copy of the foregoing **Amended Answer to Complaint, Affirmative Defenses and Counterclaims** and **Exhibits** thereto to be served on the following parties by ECF e-mail notification:


      Kristin M. Case
      Kate Sedey
      Kendra L. Kutko
      The Case Law Firm, LLC
      250 S. Wacker Drive, Suite 230
      Chicago, IL 60606
      312 920-0400



By:     /s Carla J. Rozycki